## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **OIC DREAMS GREENE COUNTY IV, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:23-cv-1297-ACA** |
| | ) | |
| **SHERIFF JONATHAN BENISON** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Gambling is illegal under Article IV, § 65 of the Alabama Constitution. However, voters in Alabama may approve the operation of nonprofit bingo halls in certain counties by constitutional amendment as an exception to the general prohibition on gambling. In 2003, voters in Alabama approved such an amendment to allow nonprofit bingo operations in Greene County.

The local amendment to the Alabama Constitution empowers Defendant Sheriff Jonathan Benison to regulate licenses, permits, and operations of the bingo halls in Greene County. Pursuant to this authority, Sheriff Benison promulgated rules and regulations. Under one rule, nonprofit bingo halls must pay an assessment fee to the Sheriff's Department. The funds collected from these monthly assessments are used to pay the Sheriff Department's legal fees in other bingo-related litigation.

Plaintiff OIC Dreams Greene County IV, Inc. operates a bingo hall in Greene County and contends that these monthly assessments violate the Fifth and Fourteenth Amendments to the United States Constitution. (*See* doc. 18). After OIC Dreams moved for leave to file a second amended complaint (doc. 20), Sheriff Benison opposed the amendment and moved to dismiss the amended complaint, asserting that he is immune from suit under the Eleventh Amendment and that OIC Dreams has failed to state a claim (docs. 22, 24).

The court **GRANTS IN PART** and **DENIES IN PART** both motions. (Docs. 20, 22). To the extent OIC Dreams contends that Sheriff Benison lacks authority under the amendment to Alabama's Constitution to impose monthly assessments, Sheriff Benison is immune from suit. The court therefore **GRANTS** Sheriff Benison's motion to dismiss and **DISMISSES** OIC Dreams's claim of substantive due process based on that theory **WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Because any claims based on this theory are subject to dismissal and therefore futile, the court **DENIES** OIC Dreams's motion to amend to the extent it intends to continue to pursue this theory as to the three claims in the proposed second amended complaint.

But Sheriff Benison is not immune from claims challenging his rules and regulations as a violation of Equal Protection Clause and the substantive component of the Due Process Clause of the Fourteenth Amendment to the United States

Constitution. Accordingly, the court **DENIES** Sheriff Benison's motion to dismiss and **GRANTS** OIC Dreams leave to file a second amended complaint that complies with this order on or before **December 18, 2023**.

## I.    BACKGROUND

In deciding a motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The operative complaint and proposed second amended complaint rely on the same factual allegations. (*Compare* doc. 18 ¶¶ 5–21, *with* doc. 20-1 ¶¶ 5–21). Accordingly, the court cites to the facts in the operative complaint:

Article IV, § 65 of the Alabama Constitution generally prohibits "lotteries," "gift enterprises," and "all other forms of gambling in Alabama." *Dream, Inc. v. Samuels*, ___ So.3d ___, No. SC-2022-0808, 2023 WL 4141638, at *2 (Ala. June 23, 2023) (quotation marks omitted); *see also* Ala. Const. art. IV, § 65. This prohibition extends to bingo. *Dream, Inc.*, 2023 WL 4141638, at *2. "Notwithstanding § 65's prohibition on lotteries, local constitutional amendments have authorized bingo games in various counties" when bingo is played in its "traditional[]" form. *See id.* (quotation marks omitted); *see also Barber v. Cornerstone Cmty. Outreach, Inc.*, 42 So. 3d 65, 78 (Ala. 2009) ("[T]he bingo amendments are exceptions to the lottery prohibition . . . .").

3

In 2003, voters approved a local constitutional amendment to allow nonprofit organizations to operate bingo halls in Greene County, Alabama. *See* Ala. Const. Amend. 743. The amendment empowers the county sheriff to "promulgate rules and regulations for the licensing, permitting, and operation of bingo games within the county." *Id*. OIC Dreams is a bingo nonprofit that operates Frontier Charity Bingo, a bingo hall in the County. (Doc. 18 ¶¶ 3, 9–11). Sheriff Benison is the county sheriff. (*Id*. ¶ 4).

Sheriff Benison charges bingo nonprofits two types of fees. (*Id*. ¶¶ 7–8). First, the bingo nonprofit must pay a one-time license fee that is due when the bingo nonprofit applies to operate a bingo hall in the County. (*Id*. ¶ 7). Second, the bingo nonprofit pays a monthly "assessment" or "box fee[]" that is calculated by multiplying 500 (representing the minimum number of machines operating at a facility) by an amount Sheriff Benison selects arbitrarily. (Doc. 18 ¶ 8) (quotation marks omitted). The bingo nonprofits initially paid these monthly assessments to governmental entities and nonprofits that do not operate bingo halls and were selected by Sheriff Benison. (*Id*. ¶ 12; *see also*, *e.g.*, doc. 18-1).

On May 26, 2023, Sheriff Benison notified various nonprofits that the Sherriff's Department would no longer direct the bingo nonprofits to pay the monthly assessments to nonprofits. (*See* doc. 18-5 at 2–3). Sherriff Benison informed the nonprofits that because "the Attorney General has been waging a

campaign against the conduct of bingo in Greene County," the Sheriff's Department would use the monthly assessments to pay its own legal fees in defense of bingo operations in the county. (*Id.*).

Starting in June 2023, Sherriff Benison directed the bingo nonprofits, including OIC Dreams, to pay all monthly assessments directly to the Greene County Sheriff's Department. (Doc. 18 ¶ 13; *see also* docs. 18-2, 18-3, 18-4, 18-8). OIC Dreams initially refused to pay the monthly assessments once Sheriff Benison directed all bingo nonprofits to pay the assessments exclusively to the Sheriff's Department. (*See* doc. 18 ¶¶ 15–16; *see also* doc. 18-6). After Sheriff Benison threatened to revoke OIC Dreams's bingo license, OIC Dreams resumed paying the monthly assessments. (Doc. 18 ¶¶ 17–20; *see also* doc. 18-6 at 2; doc. 18-7). The monthly assessments for June through September 2023 totaled $344,986.50. (Doc. 18 ¶ 13).

The first amended complaint asserts only one cause of action: violation of substantive due process, under the Fourteenth Amendment, because Sheriff Benison's monthly assessments are arbitrary and capricious and occur without statutory or legislative authority. (Doc. 18 ¶¶ 22–26). The proposed second amended complaint retains that claim and further asserts that the monthly assessments violate the Equal Protection Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. (*See* doc. 20-1 ¶¶ 22–37).

OIC Dreams pleads all claims against Sheriff Benison in his official capacity. (Doc. 18 ¶ 4; *see also id*. at 7–8; *accord* doc. 20-1 ¶ 4). OIC Dreams seeks only prospective relief from the due process and equal protection claims and seeks both prospective relief and monetary damages from the takings claim. (*See* doc. 18; doc. 20-1).

## II.    DISCUSSION

A party gets one opportunity to amend "as a matter of course" and then may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Although the "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), a district court may deny leave to amend as futile when the proposed claims would be subject to dismissal, *see Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017).

Because the first amended complaint and the proposed second amended complaint both assert the same substantive due process claim, the court begins with Sheriff Benison's arguments for dismissal of that claim. The court then considers whether OIC Dreams's proposed equal protection and unlawful taking claims are futile.

### a.  OIC Dreams's Substantive Due Process Claim

OIC Dreams asserts that Sheriff Benison's monthly assessments violate the substantive component of the Due Process Clause of the Fourteenth Amendment

because these assessments are arbitrary and capricious and occur without statutory or legislative authority. (Doc. 18 ¶¶ 22–26; *accord* doc. 20-1 ¶¶ 22–26). Sheriff Benison contends that OIC Dreams cannot state a substantive due process claim for depriving an entity of a state-created property right and that he is entitled to Eleventh Amendment immunity. (*See* doc. 22 at 4–11).

Sheriff Benison does not challenge OIC Dreams's assertion that the monthly assessments are arbitrary and capricious until the reply brief. (*See* doc. 28 at 4–9; *but see* doc. 22; doc. 24 at 4–5). But this argument came too late; a party cannot raise an argument for the first time in a reply brief. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Accordingly, the court will not consider this argument.

Because Eleventh Amendment immunity implicates the power of the court to hear this case, *see Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1294 (11th Cir. 2023), the court will consider that issue first.

      *i. The Eleventh Amendment does not bar OIC Dreams's claim.*

"The Eleventh Amendment ordinarily bars a state's citizens from suing the state" and certain state officials in federal court. *See Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 889 n.5 (11th Cir. 2023). "In *Ex parte Young*, the Supreme Court recognized an exception to sovereign immunity in lawsuits against state officials for prospective declaratory or injunctive relief to stop ongoing

violations of federal law." *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1288 (11th Cir. 2015). But *Ex parte Young* does not apply to violations of state law; in such a case, the Eleventh Amendment bars the suit in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Sheriff Benison contends that OIC Dreams does not seek relief for alleged violations of federal law, but rather, for alleged violations of state law. (*See* doc. 22 at 9–11). The complaint is not clear on this issue.

At times, OIC Dreams contends that Sheriff Benison imposed the monthly assessments without authority from the local amendment to the Alabama Constitution, an issue of state law. (*See* doc. 18 ¶¶ 15, 21, 23, 26; *accord* doc. 20-1 ¶¶ 15, 21, 23, 26). To the extent that OIC Dreams challenges Sheriff Benison's authority to issue monthly assessments, the court agrees with Sheriff Benison that the Eleventh Amendment precludes this court from exercising jurisdiction over that aspect of OIC Dreams's claim. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106. Accordingly, the court **GRANTS** Sheriff Benison's motion on that ground and **DISMISSES** that aspect of OIC Dreams's claim **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

OIC Dreams alleges in the alterative that Sheriff Benison does have the authority to regulate bingo operations but that he arbitrarily and capriciously exercises this authority in violation of federal law. (*See* doc. 18 ¶¶ 5–9, 24–25;

*accord* doc. 20-1 ¶¶ 5–9, 24–25). The standard to invoke *Ex parte Young* is a low one: "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient." *PCI Gaming Auth.*, 801 F.3d at 1288 (quotation marks omitted). Accordingly, to the extent OIC Dreams challenges Sheriff Benison's conduct as a violation of federal law, the Eleventh Amendment does not bar this claim, and the court **DENIES** Sheriff Benison's motion to dismiss.

### ii. *OIC Dreams has adequately alleged a claim for relief.*

A substantive due process claim has two elements: (1) deprivation of a federal constitutionally protected interest and (2) the deprivation was caused by an abuse of governmental power. *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016). Sheriff Benison focuses exclusively on the first element of this claim and contends that OIC Dreams has not adequately alleged these elements because OIC Dreams has not alleged a violation of a state-created property right rather than a constitutionally protected right. (Doc. 22 at 4–7). In response, OIC Dreams concedes that the substantive component of the Due Process Clause does not ordinarily protect state-created property rights and invokes a limited exception to this rule for infringement on those rights by a "legislative act." (*See* doc. 25 at 6–7) (quotation marks omitted). In reply, Sheriff Benison

The Due Process Clause protects the fundamental rights created by the United States Constitution. *See Greenbriar Vill., LLC v. Mountain Brook*, 345 F.3d 1258,

1262 (11th Cir. 2003). Property rights however derive from "independent source[s] such as state law" and are not created by the Constitution. *See id*. (quotation marks omitted). Accordingly, to the extent OIC Dreams bases its claim on the right to operate a bingo hall license or retain any funds associated with those operations, the court agrees with Sheriff Benison that ordinarily no substantive due process claim would be viable. *See id*.

But "[t]here is at least one exception to this rule[:] where a person's state-created rights are infringed by a legislative act, the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1284 (11th Cir. 2021) (quotation marks omitted). OIC Dreams concedes that Sheriff Benison "is generally considered part of the executive branch" (*see* doc. 25 at 8), but that is not the end of the inquiry "because local governing bodies often" engage in both executive and legislative acts, *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014); *see also Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005) ("While the actions of some government officials can easily be categorized as legislative or executive, for other[ government officials], . . . sorting out which hat they were wearing when they made a decision can be difficult.").

Instead, the court considers the type of conduct alleged, the scope of those affected by it, and the type of challenge to that conduct. *See Lewis*, 409 F.3d at 1273;

*Kentner*, 750 F.3d at 1280; *PBT Real Est., LLC*, 988 F.3d at 1284; *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994) (en banc); *see also*, *e.g*, *Reyes v. N. Tex. Tollway Auth., (NTTA)*, 861 F.3d 558, 562–63 (5th Cir. 2017) (describing the "legislative/executive dichotomy" and holding that a state-agency's imposition of fees for toll roads was a legislative act because "[t]he fees [we]re broadly imposed" and "[t]he lawsuit s[ought] to invalidate the fees across the board, not just a particular application of the fees that had an egregious impact").[1]

"[E]xecutive acts typically arise from the ministerial or administrative activities of members of the executive branch" and "characteristically apply to a limited number of persons (and often only one person)." *McKinney*, 20 F.3d at 1557 n.9. For example, "employment terminations or individual acts of zoning enforcement" are executive acts. *Kentner*, 750 F.3d at 1280; *see*, *e.g.*, *Lewis*, 409 F.3d at 1273 ("[A]n administrative decision by [the county commissioner] to enforce the current property designation to the economic detriment of the [homeowners] . . . is a textbook 'executive act.'"). An as applied challenge to governmental conduct "always" challenges an executive act and cannot support a substantive due process claim. *PBT Real Est., LLC*, 988 F.3d at 1284 n.20 (quotation marks omitted).

---

[1] Decisions of the Fifth Circuit are not binding on this court, but such decisions may be cited as persuasive authority. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("[W]e consider decisions from other circuits as persuasive authority"); *see also Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). The court finds the reasoning of the Fifth Circuit persuasive.

"Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *McKinney*, 20 F.3d at 1557 n.9. A plaintiff therefore challenges the entire law or executive regulation as constitutionally infirm. *E.g.*, *PBT Real Est., LLC*, 988 F.3d at 1284. And to prevail on that challenge at this stage in the case, OIC Dreams must plead that Sheriff Benison's conduct "on its face, [i]s arbitrary and irrational and not rationally related to a legitimate government purpose." *Cf. id.*

OIC Dreams challenges Sheriff Benison's promulgated rules and regulations on their face and as applied. (Doc. 18 ¶ 25; *accord* doc. 20-1 ¶ 25). To the extent OIC Dreams presents an as applied challenge, the court agrees with Sheriff Benison that no substantive due process claim is viable. *See PBT Real Est., LLC*, 988 F.3d at 1284 n.20. Accordingly, the court **GRANTS** Sheriff Benison's motion to dismiss any as applied substantive due process challenge.

But OIC Dreams also makes a facial substantive due process challenge. (*See* doc. 18 ¶ 25; *accord* doc. 20-1 ¶ 25). OIC Dreams alleges that the procedure by which Sheriff Benison orders the monthly assessments is arbitrary and capricious because he bases the assessment on "an arbitrary amount" and uses these fees to pay the Department's legal fees. (*See* doc. 18 ¶¶ 8, 14, 24; *accord* doc. 20-1 ¶¶ 8, 14, 24). The court is satisfied that at this stage in the case, OIC Dreams has adequately alleged a substantive due process violation. Accordingly, the court **DENIES** Sheriff

12

Benison's motion to dismiss to the extent OIC Dreams presents a facial challenge to Sheriff Benison's rules and regulations. (Doc. 22).

Although the court agrees that this claim is not futile and therefore **GRANTS** OIC Dreams's motion for leave to amend, OIC Dreams cannot plead its claim as proposed. (*See* doc. 20-1). In the proposed second amended complaint, OIC Dreams again challenges Sheriff Benison's rules and regulations on their face and as applied. (*See id*. ¶ 25). Because an as applied challenge would be futile, OIC Dreams cannot continue with this challenge, and the court **DENIES** leave to amend on that basis.

Regarding OIC Dreams's facial challenge, OIC Dreams appears to proceed under two legal theories: (1) that Sheriff Benison lacks authority under the local amendment to the Alabama Constitution to impose the monthly assessments (*see id*. ¶¶ 15, 21, 23, 26) and (2) that Sheriff Benison has exercised that authority arbitrarily and capriciously (*see id*. ¶¶ 8, 14, 24). To the extent OIC Dreams intends to continue to pursue the first theory, the Eleventh Amendment precludes the court from exercising jurisdiction over it, and the court therefore **DENIES** OIC Dreams's motion. The court **GRANTS** OIC Dreams leave to amend its complaint to pursue its theory that Sheriff Benison has violated its substantive due process rights by arbitrarily and capriciously exercising his authority to impose assessments on bingo nonprofits.

**b.** OIC Dreams's Equal Protection Claim

In OIC Dreams's proposed second amended complaint, OIC Dreams alleges an equal protection claim. (*See* doc. 20-1 ¶¶ 27–32). "[T]he Equal Protection Clause requires government entities to treat similarly situated" people or businesses alike. *See Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006); *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 825 F.2d 367, 370 (11th Cir. 1987). Because OIC Dreams does not allege that it belongs to a suspect class or that Sheriff Benison has infringed upon a fundamental right, this proposed claim is subject to rational basis review. (*See* doc. 24 at 6); *see also*, *e.g.*, *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009).

"The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." *Leib*, 558 F.3d at 1306. The local amendment to the Alabama Constitution expressly gives Sheriff Benison the power to regulate nonprofit bingo halls in the county. *See* Ala. Const. Amend. 743. Accordingly, the court's analysis proceeds directly to the second inquiry: "whether there is a rational relationship between [Sheriff Benison's] objective and the means [he] has chosen to achieve it." *Leib*, 558 F.3d at 1306.

Before the court examines OIC Dreams's proposed claim, the court discards as conclusory paragraphs 28, 31, and 32. (*See* doc. 20-1 ¶¶ 28, 31–32). The Eleventh Circuit has held that similar allegations "carry no weight" because they are legal conclusions. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). Accordingly, these proposed allegations are not entitled to the presumption of truth. *See id*.; *see also Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed.") (quotation marks omitted).

After discarding the conclusory allegations, OIC Dreams has alleged: (1) OIC Dreams is a nonprofit; (2) OIC Dreams is similarly situated to other nonprofits in Greene County; (3) Sheriff Benison does not require nonprofits in Greene County that do not operate bingo halls to pay a monthly assessment to remain in operation; and (4) when Sheriff Benison requires OIC Dreams and other nonprofit bingo halls to pay a monthly assessment, he has treated bingo nonprofits different from other nonprofits in Greene County. (Doc. 20-1 ¶¶ 29–30).

Sheriff Benison asserts that this claim is futile because there is a rational basis for treating bingo nonprofits and other nonprofits differently. (Doc. 24 at 7). OIC Dreams contends that Sheriff Benison's asserted reason is procedurally improper because of the lack of evidentiary record before the court and irrational in any event. (Doc. 26 at 4–7). The court considers each argument in turn.

First, a court can conduct rational basis review without the benefit of an evidentiary record. *E.g.*, *Leib*, 558 F.3d at 1306 (concluding that a challenged ordinance "easily" survives rational basis review based at the motion to dismiss stage). Indeed, "under rational basis review, [Sheriff Benison] has *no* obligation to produce evidence to sustain the rationality of" his conduct because constitutionality "is presumed." *Id.* (quotation marks omitted; emphasis added).

However, OIC Dreams has adequately alleged that Sheriff Benison's treatment of bingo nonprofits lacks a rational basis. Sheriff Benison contends that the assessments he imposes are used to regulate bingo and prevent nonprofit bingo halls "from economically draining Greene County." (Doc. 24 at 7) (quotation marks omitted). OIC Dreams responds that this reason "is not a conceivable rational basis" because Sheriff Benison already collects a license fee and does not use the assessment funds to benefit Greene County but rather, to pay the Sheriff's Department's legal fees. (Doc. 26 at 6). The court is satisfied that at this stage in the case, OIC Dreams has adequately alleged an equal protection violation.

Accordingly, the court **GRANTS** OIC Dreams's motion because the court finds that the proposed equal protection claim is not futile.

### c. OIC Dreams's Taking Clause Claim

In OIC Dreams's proposed second amended complaint, OIC Dreams alleges that the monthly assessments constitute an unlawful taking. (Doc. 20-1 ¶¶ 33–37).

Sheriff Benison asserts that this claim is futile because a claim under the Takings Clause must allege a taking of property for public use and OIC Dreams intends to plead that Sheriff Benison takes the monthly assessments "not for a public purpose." (Doc. 24 at 13–14; *see* doc. 20-1 ¶ 36); *see also* U.S. Const. amend. V ("[P]rivate property [shall not] be taken for public use, without just compensation."). In reply, OIC Dreams explains that it inserted the "not" in error. (Doc. 26 at 8).

But even if OIC Dreams corrects this error, the claim remains subject to dismissal. OIC Dreams expressly asserts that the monthly assessments are an unlawful taking *because* Sheriff Benison lacks authority under the local amendment to the Alabama Constitution to impose these fees. (*See* doc. 20-1 ¶ 36). But as described above, the Eleventh Amendment precludes the court from exercising jurisdiction over this theory. *See McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1259 (11th Cir. 2001) (explaining that a federal court "can raise an Eleventh Amendment issue on [its] own motion").

Accordingly, the court finds that permitting OIC Dreams to pursue this claim in this court would be futile and **DENIES** leave to plead the Takings Clause claim as proposed.

## III.   CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** the pending motions. (Docs. 20, 22). The court **DIRECTS** OIC Dreams to file its second amended complaint, as amended by this order, on or before **December 18, 2023**.

**DONE** and **ORDERED** this December 13, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE