UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **OIC DREAMS GREENE COUNTY IV, INC.,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. 7:23-cv-1297-ACA <br> ) |
| **SHERIFF JONATHAN BENISON,** | ) <br> ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff OIC Dreams Greene County IV, Inc. contends that Defendant Sheriff Jonathan Benison issues monthly assessment fees that are constitutionally infirm to bingo hall license holders. (Doc. 36 ¶¶ 1, 6–8, 26–30, 32–37; *see also* doc. 31 at 13, 16). Because the court is not satisfied that OIC Dreams had standing at the time the action was filed, the court **WILL DISMISS** this action **WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The court therefore **WILL DENY** the motion to add Dream, Inc. as a party plaintiff. (Doc. 46).

I.     BACKGROUND

Although gambling is generally illegal in Alabama, voters in Alabama may approve the operation of nonprofit bingo halls in certain counties by constitutional amendment. Ala. Const. art. IV, § 65; *Dream, Inc. v. Samuels*, ___ So. 3d ___, No. SC-2022-0808, 2023 WL 4141638, at *2 (Ala. June 23, 2023). And in 2003, voters

approved a local constitutional amendment to allow nonprofit organizations to operate bingo halls in Greene County, Alabama. (*See* doc. 31 at 4); *see also* Ala. Const. Amend. 743. The amendment empowers the county sheriff to "promulgate rules and regulations for the licensing, permitting, and operation of bingo games within the county." Ala. Const. Amend. 743.

Under one such rule, Sheriff Benison issues monthly assessments to bingo hall license holders. (*See, e.g.*, doc. 33-12 at 7–10).[1] In the operative complaint, OIC Dreams alleges that it holds a license to run a "bingo facility known as Frontier Charity Bingo" for which Sheriff Benison has assessed monthly fees. (Doc. 36 ¶¶ 10–12). OIC Dreams contends that the monthly assessments violate the Equal Protection Clause and the substantive component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution because such assessments are issued arbitrarily. (Doc. 36 ¶¶ 1, 26–30, 32–37). OIC Dreams seeks (1) a declaratory judgment that the assessment of box fees is "constitutionally invalid" and (2) preliminary and permanent injunctive relief. (*Id.* at 9; doc. 33).

In response to OIC Dreams's motion for a preliminary injunction (doc. 33), Sheriff Benison submitted an affidavit attesting that the license holder for Frontier

---

[1] During the hearing on OIC Dreams's motion for preliminary injunction, counsel for Sheriff Benison revealed that Sheriff Benison has issued new rules and regulations. (*See* doc. 47 at 24–29). Because no party has provided the court with a current version of these rules and regulations, the court cites to the rules and regulations that the court *does* have, despite the outdated status of these rules and regulations.

Charity Bingo is "Dreams, Inc." (doc. 39-1 ¶ 4), along with a copy of a bingo license belonging to "D.R.E.A.M. Inc." (Doc. 39-2 at 3). After Sheriff Benison argued at a hearing on the motion that OIC Dreams could not bring this lawsuit because it did not hold the license (doc. 47 at 44–48), OIC Dreams moved to add "DREAM, Inc." as a plaintiff (doc. 46). In the motion, OIC Dreams confirmed that it is not and has never been a bingo hall license holder and that DREAM is the entity that actually holds the license. (*Id.* ¶¶ 7–8). The court then ordered OIC Dreams to show cause why the court had jurisdiction over the action. (Doc. 48).

## II.   DISCUSSION

"The judicial power of the United States extends only to actual cases and controversies." *Baughcum v. Jackson*, 92 F.4th 1024, 1030 (11th Cir. 2024). An essential component of the case-and-controversy requirement is standing. *See id.* at 1031. Article III standing has three requirements: "(1) an injury in fact," *i.e.*, "an invasion of a legally protected interest"; (2) traceability, *i.e.*, "a causal connection between the plaintiff's injury and the challenged action of the defendant"; and (3) redressability, *i.e.*, "a likelihood, not merely speculation, that a favorable judgment will redress the injury." *Rojas v. City of Ocala*, 40 F.4th 1347, 1350 (11th Cir. 2022) (quotation marks omitted). Without standing, the court lacks jurisdiction over the action. *Baughcum*, 92 F.4th at 1030.

"Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) (quotation marks omitted). The analysis therefore "must begin" with "[t]he injury alleged . . . in the[] . . . complaint." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 476–77 (1982); *see also*, *e.g.*, *Baughcum*, 92 F.4th at 1034 (starting with the plaintiff's "claimed injury"); *Bochese*, 405 F.3d at 977.

OIC Dreams asserts two claims against Sheriff Benison: (1) that Sheriff Benison's "past assessment and continuing assessment of box fees upon" bingo hall license holders "is arbitrary, capricious, and irrational on its face," which "has violated and continues to violate [OIC Dreams's] substantive due process rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution" and (2) that "Sheriff Benison has intentionally treated [OIC Dreams] differently from other nonprofits . . . by assessing box fees against [OIC Dreams] simply because [OIC Dreams] holds a license to operate bingo," which "has violated and continue[] to violate [OIC Dreams's] rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." (Doc. 36 ¶¶ 29–30, 35, 37). As relief, OIC Dreams requests "that this [c]ourt declare [Sheriff

Benison's] assessment of box fees constitutionally invalid" and enjoin him from issuing the same in the future. (*Id*. at 7–9).

When OIC Dreams initiated its lawsuit, it appears that neither OIC Dreams nor Sheriff Benison were aware that OIC Dreams was not a bingo hall license holder. (*See* doc. 46 ¶¶ 1–3). Several months later, all parties are now aware that OIC Dreams has never been and is not currently a bingo hall license holder. (*Id.* ¶¶ 7–8; *accord* doc. 49 ¶ 3). That fact renders OIC Dreams without standing to pursue its claims for two reasons: first, OIC Dreams has not suffered an invasion of a legally protected interest based on the claims alleged. And second, the injury that OIC Dreams has suffered is not traceable to the conduct that OIC Dreams challenges.

First, "the injury in fact test requires more than an injury to a cognizable interest" but rather, "that the party seeking review be himself among the injured." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Put differently, OIC Dreams must establish its "concrete stake in this suit." *See Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 93 (11th Cir. 2022) (quotation marks omitted).

This suit is about whether Sheriff Benison issues the monthly assessment fees to bingo hall license holders in an unconstitutional manner. (*See* doc. 36 ¶¶ 1, 26–30, 32–37).). But OIC Dreams is not a bingo hall license holder, has never been a

bingo hall license holder, and does not state that it intends to become a bingo hall license holder. (*See* doc. 46 ¶¶ 7–8; *see also id.* ¶¶ 1–3; doc. 49). Accordingly, OIC Dreams lacks a concrete stake in how Sheriff Benison computes and issues the monthly assessments to bingo hall license holders.

OIC Dreams emphasizes that it has been injured because Sheriff Benison assessed monthly fees in the past and it paid those assessments despite the lack of license. (Doc. 49 ¶¶ 8–9). Undeniably, OIC Dreams has suffered an injury because of Sheriff Benison's conduct. *See, e.g., Koziara*, 392 F.3d at 1305 (observing that economic injuries are among the injuries that could confer standing upon a party). But this injury is not traceable to the misconduct OIC Dreams has alleged in its complaint. *See, e.g., Baughcum*, 92 F.4th at 1034 (holding that the plaintiffs' lacked standing to assert claims against a defendant who created a license form because the plaintiffs' "claimed injury [wa]sn't a bad form, but rather the restriction of licenses based on age itself");

The traceability component of Article III standing considers whether the plaintiff's "injury fairly can be traced to the *challenged action*." *Valley Forge Christian Coll.*, 454 U.S. at 472 (quotation marks omitted; emphasis added). This analysis "is not an exacting standard" and "is less stringent that the tort-law concept of proximate cause." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (quotation marks omitted). But "traceability [is] lacking if the plaintiff would have

6

been injured in precisely the same way without the defendant's alleged misconduct." *Id*. (quotation marks omitted) (collecting cases).

Again, Sheriff Benison's alleged misconduct is that he computes the monthly bingo fees in an unconstitutional manner. (*See* doc. 36 ¶¶ 1, 26–30, 32–37). The injury OIC Dreams emphasizes, *i.e.*, that it has paid the monthly assessment fees despite its lack of a bingo hall license (*see* doc. 49 ¶ 8), is an injury that OIC Dreams experienced irrespective of the constitutionality of those fees, *see Banks*, 38 F.4th at 93. The constitutionality of the fees is entirely unrelated to OIC Dreams's injury, which is having fees it is not responsible for assessed against it. (*Compare* doc. 49 ¶ 3, *and* doc. 33-12 at 7–8), *with* Ala. Const. Amend. 743. Accordingly, traceability is lacking.

The difficult part about evaluating OIC Dreams's standing is that OIC Dreams is not a bingo hall license holder yet despite its lack of license, Sheriff Benison previously assessed fees against OIC Dreams and OIC Dreams paid those fees. But OIC Dreams invoked the court's jurisdiction because it contends that Sheriff Benison's monthly assessments to bingo hall license holders are constitutionally infirm. (Doc. 36 ¶¶ 29, 35–36). Because OIC Dreams has never been a bingo hall license holder, is not currently a bingo hall license holder, and does not assert that it intends to become a bingo hall license holder, OIC Dreams does not have standing

7

to challenge Sheriff Benison's assessments. Accordingly, the court **WILL DISMISS** this case **WITHOUT PREJUDICE** for lack of jurisdiction.

OIC Dreams also moves this court to add Dreams, Inc. as a party plaintiff. (*See* doc. 46). But "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs." *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. Unit A Mar. 19, 1981).[2] Accordingly, the court **WILL DENY** OIC Dreams's motion because the court lacks jurisdiction over this action.

### III.   CONCLUSION

The court **WILL DISMISS** this action **WITHOUT PREJUDICE** for lack of subject matter jurisdiction. The court **WILL DENY** OIC Dreams's motion to add. (Doc. 46). The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this April 11, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.